FILED

September 30, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ JW

DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ANTHONY NASH | § | |
| MONTALBANO, | § | |
| | § | |
| v. | § | NO. 3:24-CV-00316-LE |
| | § | |
| LELAND DUDEK, ACTING | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY ADMINISTRATION | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action seeking judicial review of an administrative decision by the Social Security Administration (SSA). Pursuant to 42 U.S.C. § 405(g), Plaintiff Anthony Nash Montalbano, the claimant at the administrative level, appeals from the final decision of Defendant Leland Dudek, the SSA's Acting Commissioner, denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. The parties consented to the magistrate judge conducting all proceedings, including the entry of final judgment. For the reasons that follow, the SSA's Acting Commissioner's decision is AFFIRMED.

## I.    BACKGROUND

On July 6, 2021, Montalbano applied for Social Security benefits alleging that he became disabled as of October 25, 2020[1], due to degenerative disc disease, disc herniation in the back and neck, severe headaches, pinched nerve in the back and neck, and left eye problem.[2] He was fifty-eight years old when he applied for benefits.[3] He has a high school education and two years

---

[1] Tr. of Admin. R. [hereinafter cited as "Tr"] at 14.
[2] *Id*.at 206.
[3] *Id*.at 162.

of college education.[4]  Previously, he worked as a data entry clerk, accounts payable clerk, administrative assistant, office manager, and accounts receivable supervisor.[5]

After his claims were denied initially on July 14, 2022 and upon reconsideration on April 14, 2023, Montalbano requested a hearing by an administrative law judge.[6]  On November 29, 2023, ALJ Karen Wiedemann (ALJ) held a hearing, where Montalbano appeared with a lawyer and a non-lawyer representative.[7]  On January 25, 2024, ALJ issued her written decision in which she denied Montalbano's application finding that he was not disabled.[8]  On July 29, 2024, the Appeals Council denied Montalbano's request for review of the ALJ's decision;[9] the ALJ's decision thus became the final decision of the Commissioner.[10]

## II.    STANDARDS FOR DETERMINING DISABILITY AND ALJ'S FINDINGS

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In determining disability, the ALJ evaluates the following five-step sequential evaluation process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medical determinable impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *See Kneeland v. Berryhill*, 850

---

[4] *Id*.
[5] *Id*. at 20.
[6] *Id*. at 14.
[7] *Id*. at 35 and 207.
[8] *Id*. at 14-20.
[9] *Id*. at 1-6.
[10] *Id*.

F.3d 749, 753 (5th Cir. 2017); *see also* 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the

claimant at the first four steps," *Kneeland*, 850 F.3d at 753. If the claimant meets this burden, at

step five, the burden shifts to the Commissioner to prove the claimant's employability," *Keel v.*

*Saul*, 986 F.3d 551, 555 (5th Cir. 2021).

Between step three and four, the Commissioner assesses the claimant's residual

functional capacity (RFC). *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a

determination of the most the claimant can still do despite his or her physical and mental

limitations and is based on all relevant evidence in the claimant's record." *Id.*; *see also* 20 C.F.R.

§§ 404.1520(e), 404.1545(a)(1). The RFC assists in determining whether the claimant can do

past work or other available work." *Kneeland*, 850 F.3d at 754.

Here, ALJ Wiedemann evaluated Montalbano's disability claims pursuant to the

abovementioned sequential evaluation process. At step one, the ALJ found that Montalbano had

not engaged in substantial gainful activity since October 25, 2020 (his alleged disability onset

date).[11] At step two, the ALJ found that Montalbano had the following severe impairments:

degenerative disc disease of the cervical and lumbar portions of the spine and obesity.[12] At step

three, the ALJ found that Montalbano did not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments for disability.[13] Next,

the ALJ found that Montalbano has the residual functional capacity to perform less than

sedentary work as defined in 20 C.F.R. 404.1567(a). The claimant is capable of occasionally

lifting or carrying ten pounds, frequently lifting or carrying less than ten pounds, standing or

---

[11] *Id.* at 17.
[12] *Id.*

[13] *Id.*

walking for about two hours in an eight-hour workday, sitting for about six hours in an eight-hour workday, and pushing or pulling as much as he can lift and carry. The claimant is never able to climb ladders, ropes, or scaffolds. He is occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.[14]

The ALJ found that Montalbano could perform past relevant work as a data entry clerk, accounts payable clerk, administrative assistant, office manager and accounts receivable supervisor because they are all sedentary exertional work that does not require the performance of work-related activities precluded by the claimant's residual functional capacity.[15] She noted this work was done within the past 15 years, at a level constituting substantial gainful activity, and long enough to have become competent in the basic required demands and is therefore classified as past relevant work.[16] The ALJ also opined "comparing the claimant's residual functional capacity with the physical and mental demands of this work, the vocational expert testified that an individual with the claimant's age, education, work experience, and residual functional capacity could perform the above past relevant work as generally and actually performed, basing the opinion on her professional experience. A claimant must be found "not disabled" if he has the residual functional capacity to perform past relevant work either as it is actually performed or generally performed in the national economy."[17] The ALJ found, based on the vocational expert's testimony, that claimant is able to perform his past relevant work.[18] Finally the ALJ noted that "in regard to the claimant's allegation of using a cane, the vocational expert testified that even if the claimant did require the use of a simple stick cane in addition to

---

[14] *Id.* at 17-20.

[15] *Id.* at 20.
[16] *Id.*
[17] *Id.*
[18] *Id.*

the above sedentary residual functional capacity, he could still perform all of his past relevant work."[19] For these reasons, the ALJ concluded that Montalbano had not been disabled since October 25, 2020, the alleged disability onset date, through January 25, 2024, the date of the ALJ's decision.[20]

## III.    APPLICABLE LEGAL STANDARDS

This Court's review of the Commissioner's decision is limited to two issues: (1) whether the final decision is supported by substantial evidence on the record as a whole and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021).  Substantial evidence is more than a scintilla, less than a preponderance, and is sufficient for a reasonable mind to accept as support for a conclusion. *See Id.*

In applying the "substantial evidence" standard, the court may not reweigh the issues or try the issues *de novo*. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015).  "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez v. Charter*, 64 F.3d 172, 173 (5th Cir. 1995)(per curiam).

---

[19] *Id.*
[20] *Id.*

## IV.    DISCUSSION AND ANALYSIS

Montalbano alleges that the ALJ erred as a matter of law because (1) her assessment of the opinion evidence, especially as to Plaintiff's ability to bend at the waist, was not in compliance with regulation and was unsupported by substantial evidence, and (2) her assessment of Plaintiff's subjective reports or symptoms were not in compliance with regulation and unsupported by substantial evidence.[21]

### A.    ALJ's Assessment of Opinion as to Plaintiff's Ability to Bend at the Waist was in Compliance with Regulation and Supported by Substantial Evidence

Montalbano argues that the ALJ assessment of opinion especially as to Plaintiff's ability to bend at the waist was not in compliance with regulation and is not supported by substantial evidence.[22] Specifically, Montalbano complains that the analysis on bending at the waist is inconsistent with Dr. Robert Urrea's opinion.[23] There is no requirement that the ALJ adopt a specific physician's assessment when determining a claimant's RFC. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam). "[T]he ALJ cannot completely disregard medical testimony in making an RFC determination, . . . [but] the ALJ's decision need not mirror a medical opinion." *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 553 (S.D. Miss. 2022). The ALJ has the "exclusive responsibility as the fact-finder to evaluate medical opinions . . . and decide whether they are supported by and consistent with the rest of the record." *Myers v. Berryhill*, 373 F. Supp. 3d 528, 535 (M.D. Pa. 2019).

The ALJ reviewed all of the relevant evidence and found Dr. Robert Urrea's opinion only partially persuasive.[24] Specifically, the ALJ stated that his opinion was not supported by his own

---

[21] Pl.'s Br. at 6.
[22] *Id.*
[23] *Id.* at 9.
[24] *Tr.* at 19.

medical records since the evidence shows that Plaintiff has improved significantly since his motor vehicle accident.[25] The ALJ must properly analyze the medical evidence to determine the claimant's ability to work. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). The ALJ must determine the RFC and is required to determine if the medical opinions provided are unpersuasive. *Id. See also,* 20 C.F.R. §§ 416.920c, 416.945.

The ALJ assesses the RFC based on all the relevant medical and other evidence. *See* 20 C.F.R. § 404.1545(a)(3). When evaluating physical limitations, the ALJ will "first assess the nature and extent of the physical limitations and then determine the residual functional capacity for work activity on a regular and continuing basis." *Id.* § 404.1545(b). The ALJ "must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). An ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using multiple factors, the most important of which are supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Garcia v. Berryhill*, 880 F.3d 700, 705 n.7 (5th Cir. 2018) (citation omitted).

Montalbano argues that if the ALJ does not adopt every part of an opinion from a medical source, the ALJ must explain how it considered the supportability and consistency factors and cannot be vague.[26] Montalbano further alleges that it is unclear from the explanation as to which parts of the medical opinion of Dr. Urrea the ALJ intended to exclude from the RFC.[27] He also claims that it is unclear what evidence led the ALJ to reject any specific portion of Dr. Urrea's

---

[25] *Id.*
[26] Pl.'s Br. at 9.
[27] *Id.*

opinion.[28] The Court disagrees because the record demonstrates why the ALJ found part of the opinions of Dr. Urrea unpersuasive. [29]

The ALJ is required to articulate "supportability" and "consistency" in her decision. *Id.* § 404.1520c(b)(2). "Supportability" means that a medical opinion is "more persuasive" when it is supported by relevant objective medical evidence and explanations provided by the same medical source. *Id.* § 404.1520c(c)(1). "Consistency" means that a medical opinion is "more persuasive" when it coincides "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). In other words, "supportability looks internally to the bases presented by the medical opinion itself" while "consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022). The ALJ is not required to follow formalistic rules in articulating its decision. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  The ALJ's discussion of the persuasiveness of a medical opinion and the consistency and supportability factors is not confined to the specific discussion if the opinion itself but is considered in light of the entire RFC analysis and evidence. *See Teixeira v. Comm'r. SSA* 2022 WL 3130859 at *9 n.15 (E.D. Tex. July 2022), report and recommendation adopted, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022) (ALR assessment and articulation of consistency and supportability must be read in the full context of the RFC findings).

Even if the analysis was deficient and is error, "remand is warranted only if the ALJ's error was harmful." *Miller v. Kijakazi*, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009)). Plaintiff has the burden to

---

[28] *Id.* at 10.
[29] Tr. at 18-19.

show prejudice or harm from the error. *Jones v. Astrue,* 691 F.3d 730, 734–35 (5th Cir. 2012). In this case, the ALJ did not fail to completely address a medical opinion as claimed by Montalbano requiring reversal.[30] Montalbano has not demonstrated that had the ALJ sufficiently explained the persuasiveness of Dr. Urrea's opinion by detailing supportability and consistency, she would have adopted that opinion. Thus, the Court finds that any alleged error by the ALJ in outlining the supportability and consistency is harmless and does not call for remand.

### 1.    ALJ Found Opinion Partially Unpersuasive

The ALJ gave a detailed explanation on the limited relevance of the opinions of Dr. Urrea.[31] She states "in making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-3p." The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. 404.1520c."[32] The ALJ explains that once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.[33] "For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned

---

[30] Pl.'s Br. at 8.
[31] Tr. at 18-19.
[32] *Id.*
[33] *Id.*

must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work related activities."[34]

After describing Plaintiff's complaints, the ALJ determined as the fact finder that "the claimant's allegations are not fully supported by the evidence.[35] She specifically referenced the issue complained when she writes the following:

> The claimant was in a motor vehicle accident in August of 2020 (1F). He continued consistent treatment thereafter for about a year (2F, 9F). There is MRI evidence of the cervical and lumbar spine, which demonstrates degenerative disc disease affecting C5-6, C6-7, and L5-S1, with scoliosis also present (2F/41- 42). The most current imaging of the spine from April 5, 2023, indicates only mild objective findings. With regard to the left shoulder, there is normal studies and no indication this was a separate severe impairment (2F/41). The above imaging is not consistent with the extent of limitations alleged by the claimant. In addition, the orthopedic records show he was successful and improved with physical therapy (2F). The record indicates the claimant did not want injections or anything else and his treatment practically ended one year after the accident (2F, 9F). As far as walking with a cane, there is no objective support in the record, but the undersigned notes the treating source statement from his orthopedic specialist says he will use it occasionally (3F). The undersigned has also reviewed the claimant's obesity under SSR 19-2p, and has considered it in the RFC. This evidence supports the above residual functional capacity. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: **The undersigned is only partially persuaded by the opinion of the physician assistant Joes Calderon and Dr. Robert Urrea (3F), finding, in addition to sedentary level limitations (sitting for four hours, and standing and walking for 2 hours), that the claimant would be off task 3 days a month and 5% of the working time. They also found the claimant would sometimes need to use an ambulatory assistive device; has reaching, pushing, and pulling limitations; has foot control limitations; and has significant postural and environmental limitations. Their opinion is not supported by their own**

---

[34] *Id.*

[35] *Id.*

**medical records, as the evidence shows the claimant has improved significantly since his motor vehicle accident (2F, 9F).**[36]

As shown above, the ALJ considered the medical evidence of Dr. Urrea to determine if it was persuasive. 20 C.F.R. § 416.920(b). The ALJ followed the law and detailed her explanation on how persuasive she found the medical opinion evidence to be based on supportability (not supported by the medical records) and consistency (with the medical records including the MRI results showing mild objective findings).[37] The ALJ's explanation meets the supportability and consistency requirements under the law.

### 2.    ALJ Considered Other Medical Opinions

The record also demonstrates that the ALJ considered all the medical opinions in the record.[38] The ALJ states she "finds consistent with the record and persuasive the examination and findings by the consultative examiner Nilesh Mehta, MD (5F), from April 3, 2023, which demonstrated no acute distress, normal strength in all areas, no need for an assistive device, and normal range of motion, which is consistent with the record (2F; 9F)." She also states that she "is only partially persuaded by the opinion of DDS physical consultant Gary Smith, MD (4A), finding the claimant limited to no more than light work with additional postural limitations. Dr. Smith does not appear to have considered the claimant's obesity, which further supports limiting the claimant to sedentary exertional level with the additional nonexertional limitations set forth in the above residual functional capacity." Finally, the ALJ states that she "does not find persuasive the statement of DDS physical consultant Patty Rowley, MD (1A), who said that there is insufficient evidence, which is not an opinion. Based on the foregoing, the undersigned finds

---

[36] *Id.*
[37] *Id.*
[38] *Id.*

the claimant has the above residual functional capacity assessment, which is supported by the evidence in the record."[39]

### 3. Summary Overruling Point One

When developing the RFC, the ALJ considered the medical evidence, medical opinions in the record, and the claimant's testimony.[40] The ALJ gave a detailed explanation of the limited relevance of the opinions of Dr. Urrea.[41] The Court concludes that there is substantial evidence to support the ALJ's decision on the RFC. Alternatively, the Court finds that any alleged error by the ALJ in failing to outline the supportability and consistency of Dr. Urrea's opinion is harmless and does not call for remand.

### B. ALJ's Assessment of Plaintiff's Subjective Reports of Symptoms Complies with Regulation and is Supported by Substantial Evidence

Social Security Ruling 16-3p explains that an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  SSR 16-3p, 2017 WL 5180304, at *1-2 (Oct. 25, 2017).  The ALJ, however, cannot ignore statements of symptoms but, rather, must evaluate them according to the two-step process set forth in this regulation.  The ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain;" and evaluate the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.  *Id.* at *2–4.   The ALJ must evaluate the symptoms experienced by the claimant by looking to the objective medical evidence, the claimant's statements, medical sources, and several other factors, including daily activities, aggravating symptoms, pain characteristics,

---

[39] *Id.*
[40] *Id.* at 14-20.
[41] *Id.* at 18-19.

treatment, medication, etc. *Id.* at *3–6. In performing this evaluation, the ALJ is not, however, required to articulate expressly every regulatory factor or reason in making this determination. *See Undheim v. Barnhart*, 214 F. App'x 448, 451 (5th Cir. 2007). A fact-finder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

Montalbano claims that the ALJ failed to assess Plaintiff's subjective reports on symptoms in compliance with regulation and that it was unsupported by substantial evidence.[42] He states the analysis has to be consistent with the record and clearly articulated.[43] He states the ALJ should have looked for explanations for inconsistencies in the statements about symptoms and their effects.[44]

The ALJ properly evaluated Plaintiff's symptoms and provided reasons why they are not consistent with the evidence in the record.[45] The ALJ considered the consistency of Plaintiff's complaints with the objective medical evidence.[46] She found the allegations were not fully supported by the evidence.[47] For example, Montalbano suffers from degenerative disc disease but his imaging demonstrates only mildly objective findings and his x-rays are normal for his shoulder which he complains about having pain.[48] Additionally, he claims he needs a cane to walk while there are numerous medical records stating that Montalbano is able to walk without any limits.[49] The ALJ considered the subjective complaints of Plaintiff describing them in detail

---

[42] Pl.'s Br. at 11.
[43] *Id.* at 12.
[44] *Id.* at 14.
[45] Tr. at 18-19.
[46] *Id.*
[47] *Id.* at 18.
[48] *Id.* at 18-19.
[49] *Id.* at 19, 342, 347, 357, 362, 367, 372, 377, 389, 471, 477.

in his opinion. [50] The ALJ also considered the conservative nature of Plaintiff's medical treatment and improved symptoms that were described in the medical records including the statement of Dr. Urrea who states the physical therapy was effective in improving all of the symptoms resulting in Plaintiff being very comfortable at all times.[51] She explains that the "record indicates the claimant did not want injections or anything else and his treatment practically ended one year after the accident."[52] Additionally, the ALJ's RFC limited Plaintiff to performing a reduced range of sedentary work.[53] Finally, despite the inconsistencies, the ALJ states 'in regard to the claimant's allegation of using a cane, the vocational expert testified that even if the claimant did require the use of a simple stick cane in addition to the above sedentary residual functional capacity, he could still perform all of his past relevant work."[54]

The Court finds that the ALJ appropriately balanced Plaintiff's subjective symptoms against the objective medical records and that substantial evidence supports the ALJ's decision. Because the ALJ correctly analyzed Plaintiff's subjective complaints under the regulations and there is substantial evidence to support her decision, the Court overrules Plaintiff's second point of error.

For the reasons stated above, the Court finds that the ALJ's decision was based on substantial evidence. Montalbano has not demonstrated that he suffered harmful errors or prejudice.

---

[50] *Id.* at 18.
[51] *Id.* at 19.
[52] *Id.*
[53] *Id.* at 17-18.
[54] *Id.* at 20.

## V.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Commissioner's decision is

AFFIRMED.

So ORDERED and SIGNED this 30th day of September 2025.

_____
**LAURA ENRIQUEZ**
**UNITED STATES MAGISTRATE JUDGE**